Coney Island, II, Inc. et al. *v.* Pottsville Area School District et al. The Township of Norwegian, Appellant.

Coney Island, II, Inc. et al. *v.* Pottsville Area School District et al. Pottsville Area School District et al., Appellants.

Coney Island, II, Inc. et al. *v.* Pottsville Area School District et al. Coney Island, II, Inc. et al., Appellants.

Argued September 16, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*James J. Riley, Williamson, Friedberg & Jones,* for Coney Island, II, Inc. et al.

*Alvin B. Marshall, Lipkin, Stutzman, Marshall & Bohorad, P.C.,* with him *Richard Thornburg,* for Pottsville Area School District et al.

*Stephen P. Ellwood,* with him *Isadore E. Krasno,* for The Township of Norwegian.

OPINION BY JUDGE BLATT, March 9, 1983:

The appellants in this consolidated appeal, the Pottsville Area School District (School District) and the Township of Norwegian (Township) argue that the Court of Common Pleas of Schuylkill County erred in determining that certain "business privilege taxes" which they levied were invalid and illegal to the extent that they exceeded the limitations of Section 8 of The Local Tax Enabling Act (Section 8).[1]

---

[1] Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §§6901-6924.

The appellees, who are merchants engaged in the wholesale or retail sale of goods, wares or merchandise, or proprietors of restaurants, all transact business within the geographical boundaries of the School District or the Township, and are subject to the disputed taxes. They have cross-appealed, contending that the trial court erred in determining that they are barred from maintaining their action challenging the initial *June 23, 1976* Taxing Resolution of the School District, because of the doctrine of laches.[2]

The trial court correctly identified one of the major issues in this case as being whether or not the business privilege taxes, as levied by the School District and the Township (Taxing Authorities), are subject to the maximum limitations and sharing provisions contained in Section 8, and if so, whether or not these taxes are in violation of the provisions of Section 8.

The pertinent facts are as follows. On June 23, 1976, the School District adopted a resolution enacting a business privilege tax for general revenue purposes. This "Pottsville Area School District Business Privilege Tax", which was enacted pursuant to the Local Tax Enabling Act, 53 P.S. §§6901-6924, provided in pertinent part:

Section III. There is hereby levied for the tax year 1977 and annually thereafter a tax for

---

[2] The court found that the merchants' nine-month delay in instituting a legal action challenging the School District's June 23, 1976 resolution to be of sufficient duration under the facts and circumstances of the case at bar to warrant a conclusion, that the doctrine of laches applies. Accordingly the court held that they were procedurally barred from challenging the taxes levied by the June 23, 1976 resolution. The court did not find any similar delay in connection with the re-adoption of the School District's resolution on June 23, 1977, and did not allow the doctrine of laches to bar that challenge.

general revenue purposes on the privilege of doing business as herein defined in the Pottsville Area School District as follows:

a. RATE AND BASIS OF TAX. The rate of the tax *on each and every dollar of the whole or gross volume of business transacted* within the territorial limits of the Pottsville Area School District shall be two mills (2), two mills shall mean $2.00 per $1,000.00 of gross volume of business; except that the rate of the tax on each and every dollar of the whole or gross volume of business transacted by *wholesale* dealers or wholesale vendors within the territorial limits of the Pottsville Area School District shall be one and one-half mill (1½). All non-wholesale business of such wholesale dealers or wholesale vendors shall be taxed at the general rate of two mills (2). (Emphasis added.)

Likewise, under 53 P.S. §§6901-6924, the Township, a coterminous taxing authority with the School District, enacted a very similar ordinance which provided in pertinent part:

Section III. There is hereby levied for the tax year 1977 and annually thereafter a tax for general revenue purposes on the privilege of doing business as herein defined in the Township of Norwegian as follows:

a. RATE AND BASIS OF TAX. The rate of the tax *on each and every dollar of the whole or gross volume of business transacted* within the territorial limits of the Township of Norwegian shall be one and one-half mills, one and one-half mills shall mean $1.50 per $1,000.00 of gross volume of business; except that the rate of the tax on each and every dollar of the whole or gross volume of business transacted by *whole-*

*sale* dealers or wholesale vendors within the territorial limits of the Township of Norwegian shall be one mill.

All non-wholesale business of such wholesale dealers or wholesale vendors shall be taxed at the general rate of one and one-half mills. (Emphasis added.)

During 1977, therefore, the aggregate amount of business privilege taxes for which the merchants were allegedly liable to the School District and the Township was three and one-half (3 1/2) mills on each dollar of the whole or gross volume of *retail* business transacted, and two and one-half (2 1/2) mills on each dollar of the whole or gross volume of *wholesale* business transacted.

Section 8, however, limits the rates of specific taxes levied by political subdivisions as follows in pertinent part:

No taxes levied under the provisions of this act shall be levied by any political subdivision on the following subjects exceeding the rates specified in this section:

. . . .

(2) *On each dollar of the whole volume of business transacted* by *wholesale dealers* in goods, wares and merchandise, *one mill,* by *retail dealers* in goods, wares and merchandise and by proprietors of restaurants served, *one and one-half mills;* except in cities of the second class, where rates shall not exceed one mill on wholesale dealers and two mills on retail dealers and proprietors. No such tax shall be levied on the dollar volume of business transacted by wholesale and retail dealers derived from the resale of goods, wares and merchandise, taken by any dealer as a trade-in or as part payment

for other goods, wares and merchandise, except to the extent that the resale price exceeds the trade-in allowance.

In a provision as to sharing, Section 8 additionally provides that:

Except as otherwise provided in this act, at any time *two political subdivisions shall impose any one of the above taxes* on the same person, subject, business, transaction or privilege, located within both such political subdivisions, *during the same year or part of the same year,* under the authority of this act shall, during the time such duplication of the tax exists, except as hereinafter otherwise provided, *be one-half of the rate,* as above limited, and such one-half rate shall become effective by virtue of the requirements of this act from the day such duplication becomes effective without any action on the part of the political subdivision imposing the tax under the authority of this act. . . . (Emphasis added.)

The merchants argue, and the trial court agreed, that the Business Privilege Tax Resolution of the School District and the Business Privilege Tax Ordinance of the Township are subject to the maximum limitation *and* sharing provisions of Section 8. The taxing authorities, however, argue that their taxes are "business privilege taxes" which do not have as their subject "each dollar of the whole volume of retail and wholesale business transacted", but merely utilize the said *volume* of business as a measure of the tax on the privilege of conducting that business.

No more than could the trial court can we accept the contention of the taxing authorities that the "subject versus measure" tax analysis approach excludes their taxes from the provisions of Section 8, for to do

so would effectively emasculate the said section. As the trial court recognized, were we to agree with the taxing authorities position,

> it would require only a tax draftsman of limited imagination and expertise employing the "subject versus measure" approach to structure an ordinance or resolution imposing a tax on earned income at a rate in excess of one per cent, and thereafter attempt to establish the validity of that tax in contradiction of subsection (3) of Section 8 arguing that the tax did not have as its subject earned income, but only used earned income as a measure of the tax for the privilege of generating that income.
>
> . . . .
>
> The validity of all . . . privilege taxes, even though in direct conflict with Section 8, might be established by relying on the "subject versus measure" approach. . . . The end result would be that Section 8 might have in theory some effectiveness, but in practice would be rendered meaningless, if not absurd. Principles of statutory construction dictate that such an approach be rejected. University Club v. Pittsburgh, 440 Pa. 562, 271 A.2d 221 (1970); 1 Pa. C.S.A. §1921(a) and §1922(1).

The trial court also recognized the importance of effectuating the intent of the Legislature to limit the rate of taxes on the specific subjects listed in Section 8. Section 1921 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921 provides that "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."

Additionally, we believe that the language contained in subsection (a) of the third sections of the

resolution and the ordinance are instructive. These subsections are captioned "RATE AND BASIS OF TAX", and both provide that the taxes imposed shall be "*ON* each and every dollar of the whole or gross volume of business transacted." (Emphasis added.) Of course, inasmuch as the nature of a tax is to be determined by its *substance* and not by its label, *Gaugler v. Allentown,* 410 Pa. 315, 189 A.2d 264 (1963), it is clear that the mere fact that the tax is labeled a "business privilege tax" does not necessarily make it one. For all of the foregoing reasons, and keeping in mind that legislation imposing a tax must be strictly construed in favor of the taxpayer, *Commonwealth v. Allied Building Credits, Inc.,* 385 Pa. 370, 123 A.2d 686 (1956), we believe that the trial court correctly determined that these taxes fall within the purview of Section 8, and that they are invalid and illegal to the extent that they exceed the limitations and sharing provision of Section 8.

Prior to arriving at a discussion of the substantive issue presented by the cross-appeal, we feel constrained to comment briefly on the atypical procedural aspects of this case. It appears that, after the merchants initially pleaded a plethora of constitutional and statutory objections to the School District's taxing resolution and the Township's taxing ordinance, counsel for all parties stipulated[3] that the ultimate issue of the validity of these business privilege taxes would be submitted to the Chancellor *on a single question;* namely, whether or not the taxes are invalid because of the application of the provisions of Section 8. Contrary to this stipulation, however, the trial court noted that the taxing authorities "have

---

[3] We note that although such stipulation is referred to in the trial court's opinion, and in the briefs of the parties, it is nowhere evidenced in the record.

also reserved the right to raise and pursue the procedural issue of whether the doctrine of laches is operable in the instant actions to prevent the challenges" of the merchants.

We fail to understand how there can have been a stipulation as to the sole issue being the validity of the tax and a concurrent reservation of the right to pursue the doctrine of laches especially in view of the trial court's statement that "the matters are presently before the Chancellor on [the taxing authorities'] motion for judgment on the pleadings", which statement was filed by the taxing authorities. Clearly, where there are material issues of *fact* in dispute, a judgment on the pleading *cannot* be entered.[4]  *Tate v. Pennsylvania Board of Probation and Parole*, 40 Pa. Commonwealth Ct. 4, 396 A.2d 482 (1979). And equally clear is the rule that the applicability of the doctrine of laches is a *factual* determination. Inasmuch, therefore, as the taxing authority reserved the right to pursue the applicability of the doctrine of laches, there was admittedly a factual dispute, and it was improper to pursue judgment on the pleadings, notwithstanding the trial court's failure to recognize this fact. Nonetheless, the trial court allowed the aforementioned stipulation and reservation, and, without hearing any evidence on the resulting prejudice to the School District from this nine month delay, concluded:

> we find plaintiffs' nine month-delay in initiating a legal action challenging the June 23, 1976, resolution to be of sufficient duration under the facts and circumstances of the case at bar to

---

[4] In addition to the procedural entanglement noted, we would also note that, although Section 8 was found to apply to the School District's and the Township's taxes, and the doctrine of laches was found to apply to the School District's tax, the court never directly granted or denied the motion for judgment on the pleadings.

warrant a conclusion that the doctrine of laches applies. Accordingly, we are constrained to hold that plaintiffs are procedurally barred from challenging the taxes levied and imposed by the June 23, 1976, resolution, notwithstanding the substantive invalidity of those taxes.

It is axionmatic, however, that:

Laches requires not only a passage of time, but *also* a resultant prejudice to the party asserting the doctrine. . . . The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, *under the circumstances of the particular case,* the complaining party is guilty of want of due diligence in failing to institute his action *to another's prejudice.* . . . The question of laches is *factual* and to be determined by an *examination* of the circumstances. (Citations omitted; emphasis added.)

*Jones v. Oxford School District,* 3 Pa. Commonwealth Ct. 102, 105-06, 281 A.2d 188, 190 (1971).

In this case, inasmuch as there was no hearing on the resulting prejudice from the delay, no opportunity for evidence to be offered, and thus no showing of prejudice, there was no basis for the trial court's determination that laches is applicable here. We will therefore remand the case for a determination on the *sole* issue of the applicability of the doctrine of laches. We will affirm, however, that portion of the trial court's order which held that the School District's Business Privilege Tax Resolution and the Township's Business Privilege Tax Ordinance are subject to the limitations and sharing provisions of Section 8, and are invalid and illegal to the extent that they are inconsistent with Section 8.

## ORDER

· AND Now, this 9th day of March, 1983, that portion of the order of the Court of Common Pleas of Schuylkill County which held that the Pottsville Area School District's Business Privilege Tax Resolution and the Township of Norwegian's Business Privilege Tax Ordinance are subject to the limitations and sharing provisions of Section 8 of the Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §6908, and are invalid and illegal to the extent that they are inconsistent with said provisions of Section 8, is hereby affirmed.

That portion of the order of the Court of Common Pleas of Schuylkill County which held that the doctrine of laches was applicable to this case at bar, is hereby reversed and remanded for a hearing consistent with this opinion. Jurisdiction is relinquished.