**In re ESTATE OF Anna Marie DEVINE, Deceased.**

**Appeal of Patrick J.F. Devine.**

Superior Court of Pennsylvania.

Argued July 26, 2006.

Filed Oct. 18, 2006.

Reargument Denied Dec. 11, 2006.

Michael P. Dignazio, Media, for appellant.

Thomas L. Kelly, Media, for participating party.

BEFORE: MUSMANNO, KLEIN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Patrick Devine appeals from the November 14, 2005 Decree entered by the Orphan's Court of Delaware County ordering the dismissal of his Petition to Show Cause Why the Premises 11 Drexel Avenue, Landsdowne, Pennsylvania 19050 Should Not Immediately Be Stricken From Inventory.

¶ 2 The facts underlying this case are not in dispute. On April 15, 1974, appellant's mother, Anna Marie Devine a/k/a Marie Gallagher ("decedent") purchased the property known as 11 Drexel Avenue, Landsdowne, Pennsylvania. On the same date, she executed a deed ("1974 deed") for the property naming herself as trustee and granting a life estate to herself, while also naming appellant the ultimate beneficiary.

The pertinent provisions of the deed are as follows:

> Between Joseph Pastelak and Patricia Pastelak (hereinafter called the "Grantors") of the one part, and Marie Gallagher, Trustee for Patrick J.F. Devine, a Minor, age 10 years (hereinafter called the "Grantee") of the other part,
>
> In trust that the said Marie Gallagher, Trustee and the survivor or her, her successors and assign, shall manage and operate the said granted premises ... until the said Patrick J.F. Devine attains the age of 35 years, whence the said premises is to be conveyed over to the said Patrick J.F. Devine, being fully discharged from all trustee and limitations whatsoever,
>
> Provided, however, that the said Marie Gallagher and Joe Devine and Elizabeth A. Hayes are to occupy the said granted premises as a home, paying equal shares of all operating expenses and repairs, Provided, however, that in the event of the death or incapability of the said Marie Gallagher, trustee, then Joe Devine is to be appointed trustee under his hand and seal. In the event Joe's [D]evine's demise then Elizabeth A. Hayes and Reverend Father Albert J. Mangan are to be appointed co-trustees under their hand and seal for the said Patrick J.F. Devine,
>
> *Provided, also nevertheless, if it is feasible to sell or mortgage the said premises, it may be lawful for the said Marie Gallagher, trustee, and for the successor trustees to do so, to convey free and clear of any or all trusts or limitations whatsoever* and without any liability on the party of the buyer as to the application of the Purchase Money,

Record, No. 8, 11/14/05 Decree, Exb. A (emphasis added).

¶ 3 On January 7, 1983, decedent executed a deed to convey the property to herself and her husband as tenants by the entireties for $1.00 in consideration. This deed was recorded in the Office of the Recorder of Deeds on March 3, 1989. Record, No. 8, 11/14/05 Decree, Exb. A.

¶ 4 On July 1, 2004, decedent passed away, leaving behind a will. The will was probated and letters of administration were issued to the named executor on November 3, 2004. Shortly thereafter, the executor filed an inventory of real and personal property and included the Drexel Avenue property in the inventory.

¶ 5 Appellant initiated the current proceedings by filing the underlying Petition on June 6, 2005. The trial court dismissed the Petition On November 14, 2005, after deciding the case on documentary evidence. In doing so, the court arrived at a number of conclusions, which are outlined in the trial court's Opinion. First, the trial court determined the language of the trust deed reserved the decedent's right to revoke the property as settlor. Trial Court Opinion, Clouse, P.J., 2/27/06, at 4. Second, the court concluded decedent revoked the trust by conveying the property to herself and her husband in 1983. *Id.* Third, the trial court found the 1974 deed did not create a vested interest in the then minor appellant and, as such, the trust was testamentary in nature. *Id.* Fourth, the trial court concluded the property was part of decedent's estate because decedent had lawfully revoked the trust that once held the property. *Id.* Finally, the court found decedent had exercised her right of revocation prior to appellant's turning age 35. *Id.* at 5.

¶ 6 Appellant subsequently perfected a timely appeal with this Court. Thirty-five days after appellees filed their brief, appellant filed a reply brief with this Court. On July 19, 2006, we struck the reply brief as

untimely. *See* Pa.R.A.P. 2185(a), **Time for Serving and Filing Briefs**.

¶ 7 Although the trial court failed to consider the defense of laches, appellees properly have preserved the defense by raising it in their answer to appellant's petition and by including the defense in their brief to this Court. Record, Answer to Petition Pursuant to 20 Pa.C.S.A. § 3305 To Show Cause Why the Premises 11 Drexel Avenue, Landsdowne, Pa. 19050 Should Not Immediately Be Stricken From Inventory; Appellees' brief at 14–16.

¶ 8 The doctrine of laches is summarized as follows:

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. Moreover, the question of laches is factual and is determined by examining the circumstances of each case. Prejudice in this context means that the party must change his position to his detriment in order to invoke laches. Furthermore, the doctrine is an equitable doctrine that should not be applied in favor of a person who has failed to take required action on his own.

*In re Estate of Scharlach*, 809 A.2d 376, 382–383 (Pa.Super.2002), citing *Sprague v. Casey*, 520 Pa. 38, 45, 550 A.2d 184, 187– 188 (1988) (internal citation omitted).

¶ 9 As noted above, decedent executed the deed of trust in 1974, when appellant was ten years of age. Accordingly, appellant was 19 when appellee exe- cuted the deed, and 25 when decedent recorded the deed removing the Drexel Avenue property from the trust, thereby conveying it to herself and her husband. It is axiomatic that the recording of a deed in an index provides notice to all persons. *See* 16 P.S. § 9853, **Index to be notice**. Appellant reached the age of 35 in 1999, and still did not raise objections to the termination of the trust even though, had the trust been in existence, he would have received the *corpus* of the trust at that time. It was only in 2004, after his mother had died, that appellant challenged the revocation of the trust. As an equitable matter, we are bound to assume appel- lant's delay resulted from his failure to exercise due diligence, as the record is wholly devoid of any explanation as to why it took 15 years to challenge the trust revocation. *See In re Estate of Scharlach*, *supra* at 382–383.

¶ 10 We conclude this delay resulted in prejudice to the estate. As the trial court emphasized, the ultimate issue in this case was the decedent's intent in drafting the trust deed. Due to the fact appellant wait- ed until after the decedent and all of the witnesses to the creation and revocation of the trust had passed away to prosecute this action, appellees have suffered sub- stantial prejudice by not being afforded the opportunity to question witnesses about the creation of the trust deed. *Id.* In that appellant's delay was unreasonable and resulted in prejudice to appellees, we find the doctrine of laches bars appellant's claim. *Id.* Even if we were to find laches to be inapplicable, we would affirm the trial court's Order.[1]

¶ 11 The trial court determined as a matter of law that decedent had reserved

---

1. Appellant raises the following three issues for our review:

   1. Is not a voluntary inter vivos trust for the benefit of the minor irrevocable where the parent fails to reserve and express pow- er of revocation?

   2. Can a broad power to the trustees to sell or mortgage the trust property be inter-

the right to revoke the trust by pointing to the following provision in the trust deed:

> Provided, also nevertheless, if it is feasible to sell or mortgage the said premises, it may be lawful for the said Marie Gallagher, trustee, and for the successor trustees to do so, to convey free and clear of any or all trusts or limitations whatsoever and without any liability on the party of the buyer as to the application of the Purchase Money,

Record, No. 8, 11/14/05 Decree, Exb. A. The trial court opined this passage was sufficient to demonstrate decedent intended to reserve the right to revoke the trust and had, in fact, reserved this right. Trial Court Opinion, Clouse, P.J., 2/27/06, at 4, *citing In re Fellman,* 412 Pa.Super. 577, 604 A.2d 263, 264–265 (1992) (other citations omitted).

■■■ ¶ 12 In reviewing this determination, we are unable to conclude the trial court relied on a rule of law that is palpably wrong or clearly inapplicable. *See In re Trust of Hirt,* 832 A.2d 438, 447–448 (Pa.Super.2003) (citation omitted). The touchstone in construing a trust is the settlor's intent; the language of the trust deed itself is the best and controlling evidence of such intent. *In re Benson,* 419 Pa.Super. 582, 615 A.2d 792, 795 (1992). It is well-settled a settlor has the power to revoke a trust to the extent such power was reserved by the terms of the trust. *Fellman, supra* at 264–265.

¶ 13 Although the phrasing in the trust deed is not eloquent, it functioned in a manner allowing decedent to maintain control over the Drexel Avenue property both as settlor and trustee while she remained alive. It permitted her to alienate the property *"free and clear of any and all*

*trusts."* Record, No. 8, 11/14/05 Decree, Exb. A (emphasis added). We do not find the decedent's failure to include the magic word "revoke" mitigates the fact that the language of the trust deed clearly allowed unrestrained alienation and revocation of the trust *corpus.*

■■■ ¶ 14 It is also important to note decedent did not create an *inter vivos* trust and, therefore, appellant did not have a vested right in the trust *corpus.* When a trust instrument reserves a life estate to the settlor, reserves a power of revocation, and reserves the settlor's right to control the trustee as to the details and administration of the trust, then the trust is testamentary in nature. *In re Estate of Kessler,* 419 Pa.Super. 142, 615 A.2d 65, 67 (1992), *citing In re Pengelly's Estate,* 374 Pa. 358, 363–364, 97 A.2d 844, 846 (1953) (additional citation omitted).

¶ 15 There is no question decedent reserved a life estate for herself and the power to revoke in the trust deed. Decedent's decision to name herself as trustee also exhibits an intent to control the details of the administration of the trust.

¶ 16 In light of the foregoing, we find the trial court correctly included the Drexel Avenue property in the inventory of decedent's estate after aptly determining decedent had exercised her right to revoke the trust prior to appellant's obtaining the age of 35.

¶ 17 Decree affirmed.

¶ 18 Dissenting Opinion by Klein, J.

## DISSENTING OPINION BY KLEIN, J.:

¶ 1 I respectfully dissent from the Majority's decision to uphold the inclusion of

---

preted to be an implied power of revocation reserved by the settlor?

3. Did not the deed of trust dated April 15, 1974 create a present vested interest in the trust property for the appellant?

Appellant's brief at 4 (emphasis removed).

the Drexel Avenue property in the inventory of settlor Anna Marie Devine, a/k/a Marie Gallagher's ("decedent") estate. I believe that the trust document is clear and creates an irrevocable trust without a power to terminate.

¶ 2 It is well settled that a settlor has the power to revoke a trust only if he has reserved such power by the terms of the trust. *In re Fellman,* 412 Pa.Super. 577, 604 A.2d 263 (1992) (citing Restatement (Second) of Trusts § 330(a)). Here, the power of sale reserved by decedent does not constitute a power to revoke the trust. It merely allows the trustee to sell the property, and it is nothing more than a routine power of sale which is customarily included in trust instruments.

¶ 3 Further, the power reserved to decedent as trustee was merely to *sell* the trust corpus and not to *give* it away. The right to sell simply permits the trustee to exchange one thing of value for another, with the proceeds to benefit the Appellant. However, it is clear from the record that decedent's purported "sale" of the Drexel Avenue property to herself and her husband for the sum of only $1.00 was a gift, not a sale. Since decedent lacked the power to give the property away under the terms of the trust document, the transfer is invalid.[1]

¶ 4 Moreover, I disagree with the Majority's finding that the doctrine of laches bars Appellant's claim, as that doctrine is inapplicable to this case. Appellant had no right to occupy the property until well after his 35th birthday because decedent reserved the right to remain in the house until her death. The estate was not prejudiced as a result of the fact that decedent and the witnesses to the creation of the trust are deceased and unable to testify; such testimony would not have been admissible even if the witnesses were alive, as the language of the trust document is clear and unambiguous. *See Estate of Tonner,* 353 Pa.Super. 1, 508 A.2d 1237 (1986) (court will look to extrinsic evidence to determine settlor's intent only if it cannot discern intent from text of trust document).

¶ 5 Because I would find that the trust was irrevocable and that the "sale" was an invalid attempt to revoke that trust and therefore void, I would reverse the trial court's order. Accordingly, I respectfully dissent.

---

1. I believe the conveyance would still be invalid even if it could fairly be characterized as a sale. Although decedent had the power to sell the Drexel Avenue property, the language of the trust document makes clear that she was granted that power in her capacity as trustee, not in her capacity as settlor or life tenant. As such, she was obligated to exercise that power in favor of her son, as beneficiary of the trust. *See In re Paxson Trust I,* 893 A.2d 99 (Pa.Super.2006) (stating well settled rule that trustee has duty to administer trust solely in interest of beneficiary and is prohibited from: 1) dealing with trust property for benefit of himself or third parties, and 2) placing himself in position inconsistent with interests of trust).